**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **ROBERT GRATEROL,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-26-927-SLP** |
| | ) | |
| **MARKWAYNE MULLIN, Secretary of U.S. Department of Homeland Security, et al.,** | ) | |
| | ) | |
| **Respondents.** | ) | |

**<u>REPORT AND RECOMMENDATION</u>**

Petitioner, an immigration detainee proceeding pro se,[1] filed this habeas corpus action on April 27, 2026. Doc. 1.[2] Chief United States District Judge Scott L. Palk referred the matter to the undersigned for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). Doc. 3. Respondents filed a Response, Doc. 11, and the time for Petitioner to reply has lapsed. *See* Doc. 9.

---

[1] Because Petitioner is proceeding pro se, the Court liberally construes his arguments. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*

[2] Citations to a court document are to its electronic case filing designation and pagination. Except for capitalization, quotations are verbatim unless otherwise indicated.

For the reasons set forth below, the undersigned recommends the Court grant Petitioner's request for habeas relief and order his immediate release subject to an appropriate Order of Supervision (OOS).

## I. Factual background and procedural history.

Petitioner is a native and citizen of Venezuela who entered the United States on or about July 19, 2023. Doc. 11, at 1 (citing Ex. 1). On August 3, 2023, the Department of Homeland Security (DHS) served Petitioner with a Notice to Appear (NTA), placing him into removal proceedings and charging him as removable under § 212(a)(7)(a)(i)(I) of the Immigration and Nationality Act (INA).[3] *Id.* at 1-2. DHS released him on his own recognizance. *Id.* at 2 (citing Ex. 2). On March 5, 2024, Petitioner applied for asylum and withholding of removal. *Id.* at 2 n.1 (citing Ex. 3). An Immigration Judge (IJ) has ordered Petitioner removed, and Petitioner has appealed that decision.[4]

On November 24, 2025, Petitioner was arrested during a traffic stop and Immigration & Customs Enforcement (ICE) took him into custody. *Id.* at 2

---

[3] This section, codified at 8 U.S.C. § 1182(a)(7)(A)(i)(I), provides that any noncitizen, who at the time of application for admission, was not in possession of (1) a valid unexpired entry document as required by the INA, and (2) a valid travel document/document of identity and nationality as required by regulations is inadmissible. *Id.* § 1182(a)(7)(A)(i)(I).

[4] *See* https://acis.eoir.justice.gov/en/caseInformation (last visited Aug. 3, 2026).

(citing Ex. 2). ICE transported him to the Cimarron Correctional Facility in Watonga, Oklahoma, where he remains detained. *Id.*

## II. Petitioner's claims.

Petitioner asserts three grounds for relief including: (1) a violation of the Administrative Procedure Act (APA) and the Due Process Clause; (2) violations of his "Fifth and Fourth Amendment due process rights" and a violation of 8 C.F.R. § 241.4; and (3) violations of the INA. Doc. 1, at 7. He seeks an order of release on an Order of Supervision (OOS), or to be given an individualized bond hearing, or another alternative. *Id.* at 8.

## III. Standard of review.

An application for a writ of habeas corpus "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Habeas corpus relief is warranted only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

## IV. Discussion.

### A. Section 1226 governs Petitioner's detention.

Liberally construing the allegations, Petitioner asserts his detention is unlawful as he has been denied a pre-deprivation hearing in violation of his procedural due process right under the Fifth Amendment and in violation of the INA. Doc. 1, at 7-8. Respondents argue that Petitioner is not entitled to such a hearing because he is mandatorily detained under 8 U.S.C. § 1225(b)(2)(A). Doc. 11, at 4-6.

Section 1226 governs "the usual removal process." *Salcedo Aceros v. Kaiser*, 2025 WL 2637503, at *1 (N.D. Cal. Sept. 12, 2025) (quoting *Dep't of Homeland Sec. v. Thuraissigiam,* 591 U.S. 103, 108 (2020)). The § 1226 process starts when the Government files an NTA with an immigration court. *Id.* Section 1226 then lets the Government arrest and detain noncitizens or release them on bond or on conditional parole. 8 U.S.C. § 1226(a). Release is required if the noncitizen can show they are not a danger and will show up at future hearings. *Salcedo Aceros*, 2025 WL 2637503, at *1 (first citing *Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022); and then citing 8 C.F.R. § 236.1(c)(8)). If detention continues, the noncitizen gets a bond hearing before an IJ. *Id.* To be released, noncitizens must show by a preponderance of the evidence that they are not a security threat, community danger, or flight risk. *Id.*

The initial decision to pursue Petitioner's detention "under § 1226(a) precludes the Government from later 'switch[ing] tracks' to subject [him] to mandatory detention under § 1225(b)(2)." *Gutierrez v. Chesnut*, 2025 WL 3514495, at *5 (E.D. Cal. Dec. 8, 2025) (citing *Salcedo Aceros*, 2025 WL 2637503, at *8). The rule is simple: "Sections 1226(a) and 1225(b) cannot be applied simultaneously." *Salcedo Aceros,* 2025 WL 2637503, at *8.

The Court should conclude that § 1226(a) governs Petitioner's detention, not § 1225(b).[5] *See, e.g.*, *Quiroz v. Mullin*, 180 F.4th 1226, 1240 (10th Cir. 2026) ("Based on the statutory text and context, we conclude that § 1225(b)(2)(A)'s application is limited to the border.").

**B. Petitioner is entitled to relief under § 1226(a).**

When ICE detained Petitioner after he had resided in the country for over two years on conditional parole, he was not subject to mandatory detention under § 1225(b)(2)(A). *Cf. Quiroz*, 180 F.4th at 1237 ("We hold that

---

[5] Petitioner's asylum request does not change this outcome. This Court has "declined to find" that either refusing to voluntarily depart or seeking asylum "'constitutes 'seeking admission' for purposes of this subsection.'" *Malacidze v. Noem*, No. CIV-25-1527-D, 2026 WL 227155, at *3 (W.D. Okla. Jan. 28, 2026) (quoting *Cruz-Hernandez v. Noem*, No. CIV-25-1378-D, 2026 WL 18932, at *1 (W.D. Okla. Jan. 2, 2026)); *see also Hernandez Alvarez v. Warden, Fed. Det. Ctr*, 175 F.4th 1258, 1284 (11th Cir. 2026) ("This argument fails at the gate. Section 1225(b)(2)(A) makes it clear that an applicant for admission's status as one 'seeking admission' becomes relevant upon examination by an immigration officer, which occurs before a § 1229a proceeding even commences." (quoting 8 U.S.C. § 1225(b)(2)(A))).

noncitizens who entered the United States and were thereafter detained in the interior of the country are usually subject to § 1226(a) (and thus eligible for bond), not § 1225(b)(2)(A).”). ICE initially released Petitioner under § 1226. To do so, it had to determine that Petitioner's release "would not pose a danger to property or persons," and that he was "likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). Respondents identify no change in circumstances that required revocation of Petitioner's conditional release or his detention.

Because ICE released Petitioner under § 1226(a), he is entitled to retain the legal protections created by § 1226(a). *See, e.g.*, *Otero v. Kaiser*, 2025 WL 3301056, at *8 (N.D. Cal. Nov. 26, 2025) (finding the petitioner was "protected by the Due Process rights created by § 1226(a)" after the Government initially released the noncitizen under that section). And Respondents cannot erase them by simply "switching tracks." *Salcedo Aceros*, 2025 WL 2637503, at *8; *see, e.g.*, *Barbosa da Cunha v. Freden,* 175 F.4th 61, 70 (2d Cir. 2026) (concluding the petitioner's detention was "governed by Section 1226(a), not Section 1225(b)(2)(A)," and explaining that its holding "allows noncitizens . . . who are already present in the United States and are determined not to be a flight risk or danger to the community to be released on bond under Section 1226(a) while their removal proceedings are pending"); *cf. Quiroz*, 180 F.4th at 1237 (explaining that noncitizens subject to § 1226(a) are "eligible for bond").

**C. Petitioner's procedural due process claim.**

Petitioner asserts that his detention violates his procedural due process rights because he received no pre-deprivation hearing. Doc. 1, at 8. "The Fifth Amendment's Due Process Clause forbids the Government to deprive any person of liberty without due process of law. Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas,* 533 U.S. at 690 (internal quotation marks and alterations omitted); *cf. Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings.").

"The INA establishes procedures for removing [and detaining noncitizens] living unlawfully in the United States." *Johnson v. Guzman Chavez*, 594 U.S. 523, 527 (2021); *see Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022) ("The I[NA] establishes procedures for the Government to use when removing certain noncitizens from the United States and, in some cases, detaining them.").

This Court analyzes Petitioner's procedural due process claim to determine whether he has a protected liberty interest, and what process is necessary to ensure any deprivation of that liberty interest aligns with the Due Process Clause of the Fifth Amendment. *See Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). In examining the necessary process, the Court turns

to the three factors set forth in *Mathews v. Eldridge*: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976). Respondents argue Petitioner points to no due process right that has been violated. Doc. 11, at 11-12.

"When the [G]overnment grants [a noncitizen] parole into the country, it creates a liberty interest intimately tied to freedom from imprisonment." *Sanchez v. LaRose*, 2025 WL 2770629, at *3 (S.D. Cal. Sept. 26, 2025); *see also Iza v. Arnott*, 2026 WL 67152, at *3 (W.D. Mo. Jan. 8, 2026) ("Individuals released on parole or other forms of conditional release have a liberty interest in their 'continued liberty.'" (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972))); *Sahil v. De Anda-Ybarra*, 2026 WL 560216, at *3 (D.N.M. Feb. 27, 2026) (finding "that noncitizens acquire a liberty interest once released from immigration detention"). Petitioner's interest in physical freedom "is the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas*, 533 U.S. at 690 (stating that an individual's interest in being free from detention "lies at the heart of the liberty that [the Due Process]

Clause protects"). Respondents deprived Petitioner of his protected liberty interest when ICE detained him and placed him into custody.

Turning to the *Mathews* factors, the Court finds that Petitioner has a significant private interest in remaining free from detention after spending two years in the United States before his present detention. By initially releasing Petitioner under § 1226(a), ICE necessarily determined that he "would not pose a danger to property or persons" and would "likely [] appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). Respondents have presented no evidence that there was a change in this assessment. By permitting Petitioner to remain at liberty for over two years, the Government enabled Petitioner to develop a protected liberty interest in remaining out of custody. To be sure, "Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 522 (2003). But that power remains "subject to important constitutional limitations." *Zadvydas*, 533 U.S. at 695. And it does not erase Petitioner's significant interest in remaining free from detention.

During his release, Petitioner's liberty interest presumably grew even stronger as he "form[ed] the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. The first *Mathews* factor favors Petitioner.

Second, the Court considers "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of

additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. The risk of an erroneous deprivation of Petitioner's liberty interest is considerable where, as he alleges, he was detained without notice of any change in circumstances and provided no hearing, in violation of the INA. Doc. 1, at 8.

"Constitutionally inadequate notice also often leads to constitutionally inadequate opportunity to be heard, because opportunity to be heard must be meaningful to be constitutionally sufficient." *Saqib v. Andrews*, 2026 WL 350830, at *6 (E.D. Cal. Feb. 9, 2026), *adopted*, 2026 WL 440566 (E.D. Cal. Feb. 17, 2026). Respondents detained Petitioner with no procedural safeguards to determine whether the revocation of his release was justified. So, this factor also weighs in Petitioner's favor. *See, e.g.*, *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025) ("That the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process.").

Finally, the Court considers the Government's interest, including any fiscal or administrative burdens. *Mathews*, 424 U.S. at 335. "While this Court recognizes that the [G]overnment has an interest in enforcing immigration laws," the Government's interest in detaining Petitioner without a determination whether he posed a risk of flight or danger is low. *Saqib*, 2026 WL 350830, at *6; *see, e.g.*, *Diaz v. Kaiser*, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T[he Court concludes that the [G]overnment's interest in re-

detaining Petitioner . . . is 'low,' particularly in light of the fact that Petitioner[] has long complied with his reporting requirements."). And the Court can discern no significant administrative or fiscal burden associated with placing the burden on the Government to follow its own laws and regulations. *See, e.g.*, *Iza,* 2026 WL 67152, at *3 ("An alien's opportunity to be heard regarding the revocation of his parole is only meaningful if the [G]overnment comports with its own internal standards regarding parole revocation."). Especially given that Petitioner's detention was not deemed necessary for two years.

**D. Remedy.**

Habeas is "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). "The typical remedy for such detention is, of course, release." *Id.*; *see also Thuraissigiam*, 591 U.S. at 107 ("Habeas has traditionally been a means to secure release from unlawful detention."). Federal district courts have broad equitable powers to craft habeas relief. *Burton v. Johnson*, 975 F.2d 690, 693 (10th Cir. 1992). District courts have the power and authority to dispose of habeas corpus matters "as law and justice require." 28 U.S.C. § 2243*; see also United States v. Allen*, 139 F.3d 913 (10th Cir. 1998) ("If the imprisonment cannot be shown to conform with the fundamental

requirements of law, the individual is entitled to his immediate release." (quoting *Johnson v. Rogers*, 917 F.2d 1283, 1284 (10th Cir. 1990))).[6]

The undersigned finds that Respondents' misapplication of the INA and Petitioner's continuing due process violation require his immediate release subject to the same conditions as his earlier release.[7] *Sosa v. De Anda-Ybarra*, 2026 WL 1453999, at *3 (D.N.M. May 22, 2026) (Since Petitioner's detention "is void ab initio, immediate release is the appropriate remedy to address this deprivation of liberty and restore him to the status quo ante."). Numerous courts across the country share this view.[8]

---

[6] The undersigned finds it is not necessary to reach Petitioner's remaining claims for relief under the APA or for a Fourth Amendment violation. As to Petitioner's argument that Respondents violated 8 C.F.R. § 241.4, that provision applies to noncitizens with a final order of removal, which is not the case here. *See e.g.*, *Nosirov v. Gantt*, No. CIV-26-1036-J, 2026 WL 2151159, at *5 (W.D. Okla. July 27, 2026) (Section 241.4 "govern[s] detention of noncitizens subject to a final order of removal and beyond the removal period.").

[7] "Many orders in similar cases require that a bond hearing be set in a short period of time with an automatic release if the hearing does not occur. Those cases do not examine the effect of a pending asylum petition or a clear conditional release order under § 1226." *Velasquez Montillo v. Brooksby*, 2026 WL 592355, at *10 (D. Utah Mar. 3, 2026).

[8] *See Ewere v. Cerna,* No. CIV-26-320-SLP, 2026 WL 1207088, at *1-2 (W.D. Okla. May 4, 2026) (ordering Petitioner's "immediate release" for due process violation and denial of a bond hearing); *Singh v. Noem*, 824 F.Supp.3d 1197, 1215 (D.N.M. 2026) ("The Court does not see how ordering [a] bond hearing would remedy a wrong that has been *ongoing since the outset of Petitioner's re-detention*.") (emphasis added); *Velasquez Montillo*, 2026 WL 592355, at *10 (concluding immediate release was the appropriate remedy where "[t]here has been no notice of a change in circumstances requiring

## V. Recommendation and notice of right to object.

For the reasons set forth above, the undersigned recommends the Court **grant in part** Petitioner's habeas application and **order his immediate release subject to the same conditions of his earlier release.**[9] **The undersigned also recommends that the Court order Respondents to certify their compliance with the Court's order by filing a status report within five business days of the Court's order, and to promptly provide a copy of this order to counsel for the Warden of the Cimarron Correctional Facility.** Finally, the Court should order that Respondents may

---

modification of the November 2021 [order of release on recognizance]"); *Vielma Uzcategui v. Brooksby*, 2026 WL 622751, at *13 (D. Utah Mar. 5, 2026) (same as to petitioner ordered released on her own recognizance in September 2023); *Murzi v. Noem*, 2026 WL 395111, at *2 (D. Colo. Feb. 12, 2026) (ordering petitioner's immediate release where petitioner had previously been released on parole).

[9] Should the Court determine a bond hearing is the appropriate remedy, the undersigned recommends that, given Petitioner's prolonged detention under the incorrect statute, the Court should find that it is more appropriate for the Government to bear the burden of proof in this context. *See, e.g.*, *Garcia Cortes v. Noem*, 2025 WL 2652880, at *5 (D. Colo. Sept. 16, 2025) (placing the burden of proof on the Government to justify the petitioner's continued detention (citing *L.G. v. Choate*, 744 F. Supp. 3d 1172, 1185 (D. Colo. 2024)). Having released Petitioner in 2023, the Government ought to now bear the burden of proving by clear and convincing evidence that Petitioner poses a danger to the community or a risk of flight such that he should remain in detention. *See L.G.*, 744 F. Supp. 3d at 1186 ("In general, the Supreme Court has held that the clear and convincing standard applies to civil detention where liberty is at stake." (first citing *United States v. Salerno*, 481 U.S. 739, 751 (1987), and then citing *Addington v. Texas*, 441 U.S. 418, 433 (1979))).

not re-detain Petitioner without notice and a pre-deprivation hearing before a neutral decision-maker where the Government bears the burden of proving, by clear and convincing evidence, that Petitioner is a flight risk and a danger to the community.

The undersigned advises the parties of their right to file an objection to this Report and Recommendation with the Clerk of this Court by August 10, 2026, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72.[10] The undersigned further advises the parties that failure to make timely objections to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991). This Report and Recommendation disposes of the issues referred to the undersigned Magistrate Judge in the captioned matter.

---

[10] Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to this Report and Recommendation. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484 F. App'x 227, 231 & n.2 (10th Cir. 2012) ("The Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process").

**ENTERED** this 3rd day of August, 2026.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE